DANIEL H. BRUSH, ARGILL CONNER and WILLIAM COX, Plaintiffs in Error, *v.* ISRAEL BLANCHARD, Defendant in Error.

### ERROR TO JACKSON.

After an issue of fact is made up, a demurrer to a replication comes too late, is irregular, and need not be noticed.

In a matter relating to the property of minor children, the declarations of their mother and guardian, made prior to her marriage, may be offered in evidence in a suit wherein her husband is a party, she being dead, to establish the rights of such minors.

In a controversy arising out of a claim of property on the part of minor children, a bill in chancery, and injunction, and the orders thereon appointing a receiver, etc., being a part of the files of the same court, and put in issue by the pleadings, may be admitted as competent testimony, being relevant to the issue; but the object of their introduction may be defeated by the instructions of the court.

Although a master in chancery may not, in this State, under our practice, appoint a *receiver*, yet if he does so, and the papers are *regularly* issued under the seal of the court, as they would have been if the receiver had been regularly appointed, he may defend his *action* under them in suit for trespass.

A guardian or trustee may, in a peaceable manner, take the property of a ward or other principal; and if money has been converted into goods, they may be taken in the same manner, so long as the goods can be identified. An abuse of a trust can confer no rights on the party abusing it, or those claiming in privity with him.

THIS cause was tried by PARRISH, Judge, and a jury, at April term, 1857, of the Jackson Circuit Court. The facts of the case are fully stated in the opinion of the court.

J. M. JENKINS, and C. G. SIMONS, for Plaintiffs in Error.

J. DOUGHERTY, and W. J. ALLEN, for Defendant in Error.

BREESE, J. This was an action of trespass, commenced in the Jackson Circuit Court by Israel Blanchard, against the

plaintiffs in error, for taking and carrying away certain goods and chattels, the property of Blanchard.

To the action the defendants pleaded not guilty. 2nd, the Statute of Limitations; 3rd, a separate plea by Cox, averring that, at the time when, etc., he was sheriff of Jackson county, and while such sheriff, Edgar Brush, and others named in the plea, filed their bill in chancery, in the Circuit Court of said county, against the said Israel Blanchard, on which they obtained an injunction, and a writ of injunction was issued out of the clerk's office of said court, tested by the clerk thereof, commanding, among other things, the said Blanchard to deliver the property mentioned in it to Argill Conner, who had been appointed receiver to receive the goods, etc., and to make an inventory of them, and keep them safely until the further order of the court; and further averring, that on this writ of injunction was indorsed an order, issued by and bearing test in the name of the clerk, and under the judicial seal of said court, directed to the sheriff, commanding him to execute the same, and to take and deliver the property to Argill Conner, one of his co-defendants, who had been appointed receiver for that purpose, and that, by said writ, he took the property, and placed it in the hands of said Conner, as receiver, where it remains, subject to the order of the court, etc.

4th. Plea by Conner, justifying under his appointment of receiver.

5th. Plea by D. H. Brush, averring that he kept a storehouse for the storage of goods, and received these goods and chattels on storage, ready to be delivered up to the true owner on the order of the Circuit Court.

To these special pleas there was a demurrer, and overruled as to all except the plea of the Statute of Limitations. To this the demurrer was sustained.

The plaintiff then replied to the 3rd plea, that Conner was not lawfully appointed receiver, and had no right to act as such, and that Cox, as sheriff, had no right to take the articles of property and deliver them to Conner, and issue.

The plaintiff replied to the 4th plea as above, averring that he received the goods of his own wrong, and issue; and the same to the 5th plea of Brush, that he took and carried away the goods in his own wrong, and issue.

The plaintiff replied generally to the pleas, that defendants, of their own wrong, and without the causes assigned, took and carried away the goods, and issue.

It appears from the record that, after issue was joined upon all the replications, except the last, the defendants demurred to

them, and there was a joinder in demurrer, and overruled as to all, except the last; to that it was sustained.

After these proceedings, Cox and Conner obtained leave and filed an additional plea, averring, in substance, that at the time of taking the property, Daniel H. Brush, impleaded with them, was the guardian of Edgar Brush, and others named in the plea, who are the minor children and heirs of James Brush and Jane Brush, deceased, and that the goods, household furniture, etc., belonged to the said minor heirs, and that D. H. Brush, as their guardian, had full right and authority to take possession of it, and that they, as his agents and servants, and at his request, took and carried away the goods, etc.

Brush also, by leave, pleaded an additional plea, averring that, on the 7th of January, 1851, Jane Brush, then a *feme sole*, was appointed guardian of Edgar Brush, and the others named, who are the minor children of said Jane and James Brush, deceased; that she, as their guardian, received $1,100 of moneys belonging to them; that she invested that money in purchasing the articles in controversy; that she placed them in a house, and opened a store, and commenced trading on the goods thus purchased with the money of her wards; and while she was guardian and thus trading, and while she had the articles in her possession, she, in September, 1853, intermarried with the plaintiff Blanchard, and died without issue by him, leaving the property, specified goods, etc., in a house built and owned by her previous to her marriage, and while she was a *feme sole;* that the defendant, after her death, was appointed the guardian, and as such guardian, had full right and authority to enter the premises, and into the house, and take into his possession the goods and articles remaining there, which belonged to his wards, and purchased with their money; and that he did so, aided and assisted by his co-defendants, who acted under his direction.

To the pleas of Conner and Cox, and of D. H. Brush, the plaintiff replied denying the allegations, and a formal issue made up, which was found for the plaintiff, and the damages assessed at five hundred dollars.

A motion was made for a new trial and overruled, exception taken, and the evidence preserved in the bill of exceptions.

The case is brought here by writ of error, made a supersedeas, and the errors assigned are—

*First.* In overruling defendants' demurrer to the replication to the separate pleas of Cox and Conner, being the 3rd and 4th pleas.

*Second.* Excluding from the jury the testimony of Hannah Atherton, offered by the defendants to prove the admissions of Jane Brush while she was *feme sole*, and the guardian of Edgar

Brush and the others, her minor children, made previous to her marriage with Blanchard, as to the purchase of the goods and property in dispute, with the money of her said wards, and which she had received as their guardian.

*Third.* Excluding the bill in chancery of Edgar Brush, and the others, *vs.* Blanchard, the writ of injunction issued thereon, and the indorsement and orders thereon; the report of the master in chancery, as to his appointment of a receiver, and the receiver's report.

*Fourth.* Excluding the receipt of Jane Brush, signed by her as guardian of said Edgar Brush and the others named, to D. H. Brush, administrator of James Brush, deceased, acknowledging the receipt of $167.28, as such guardian; and

*Fifth.* Overruling the motion for a new trial.

As to the first error assigned, it is sufficient to say, that the demurrer to the several replications, except to the last, was irregular, there having been an issue of fact made up. The court should not have noticed the demurrer to any except to the last replication, and to that it was sustained.

As to the second error, it appears the defendants offered to prove by Hannah Atherton her intimate acquaintance with Jane Brush in her lifetime, and the circumstances under which she purchased the property in question, and this by the declarations of Jane when she purchased them—when she was a *feme sole,* and long before her marriage with Blanchard; and for that purpose proposed this question: "Did you hear the said Jane Brush, at the time she purchased said dry goods, household and kitchen furniture, say anything in regard to what money she had used and paid for them with, and for whom they were bought, and to whom they belonged, and for whose account she was trading in them whilst she was unmarried, and previous to her marriage with Blanchard? State all she said in regard thereto, the time when she made the statements, and the circumstances under which they were made."

This question was objected to and ruled out, and an exception taken.

If the testimony sought by this question was not admissible, it must be because it was hearsay, or because it was the declaration of a person who had afterward become the wife of the party in interest, and inadmissible on the well-known and universally recognized principle, though admitting of exceptions, that as a a wife cannot be a witness against her husband's interests, her declarations or admissions cannot be used against him.

Was this testimony sought, hearsay or original? The issue before the jury was the right to this property, it being alleged on one side, and denied on the other, that it was the property

Brush et al. *v*. Blanchard.

of certain minors, the wards of one of the defendants, D. H. Brush, purchased for them by a former guardian with their money.

The defendants are to maintain this issue on their part by the best evidence of which its nature is susceptible.

What better and stronger evidence could there be than the admissions of the party purchasing, made at the time of the purchase? It will not do to say, they are but the words of a third person, not under oath, and therefore hearsay. In the view of the court, these words, or admissions, or declarations, were a part of the *res gesta*—an independent fact—and are therefore original, and not hearsay evidence. Being made at the time, they have a direct connection with the principal fact in issue, and characterize the act done. It has always been held that a contemporaneous declaration made by a party doing an act, is evidence to explain it. The only point for the court to consider was, it seems to us, were the declarations or admissions offered in proof contemporaneous with the main fact under consideration, and so connected with it as to illustrate its character?

The main fact was, whose property is it? What stronger evidence upon such a question could there be than the declarations of the party when purchasing it, and controlling it, and through whom the plaintiff himself claims, and made against the interest of the party making them? This is the highest kind of evidence, and could be safely left to a jury to say whether they were made in good faith or for a sinister purpose.

As to the other branch of the objection, the general principle is—though subject to the same exceptions—that where either husband or wife is a party to a suit, the other is an incompetent witness, in either civil or criminal cases.

This is confined to cases where a knowledge of facts is obtained by means of that confidence which that relation begets, and which public policy and the preservation of domestic quiet declare shall not be divulged in a court of justice, even though one of the parties be dead, yet it has been held that the declaration of a wife, made at the time of effecting a policy on her life, as to the bad state of her health, is evidence against her husband.

This rule, the books say, is analogous in its spirit and extent to that which excludes confidential communications made by a client to his attorney. If this be so, it is quite certain, as an attorney may depose to facts of which he obtained knowledge from sources other than his clients, or by means other than his retainers, then a wife, after the death of her husband, must be competent to prove facts coming to her knowledge from sources other than from her situation as a wife, notwithstanding they may

relate to her husband's transactions. But we do not think this case comes within the rule of marital confidence. The party whose admissions are sought for, was, at the time she made them, a *feme sole*, in whom, or in whose acts, the plaintiff, Blanchard, had no interest whatever. She was a stranger to him, and acting as a trustee for her infant children, making purchases for them with their money. Her admissions, made at the time, were against her own interest, and such admissions are always received against the party making them; and though she did afterwards intermarry with Blanchard, that circumstance should not deprive her infant children of the benefit of the testimony she made for them when she was acting for them, as their trustee. Suppose these minor children, by their guardian, were plaintiffs in an action for this property thus acquired, these declarations and admissions would be good evidence to support their claim, and the only evidence. Being defendants by their guardian, their case is no worse.

There being no objection to the form of the question proposed, we think it should have been put, and answered.

As to the third error assigned, including the bill in chancery, and the writ of injunction and orders endorsed thereon, we think, as they were files of the Circuit Court, and put in issue by the pleadings, they were competent testimony. What they might establish, is another question. Instructions from the court might have been predicated on them, calculated to destroy the object of their introduction. They should have been allowed as evidence, because they were relevant to the matters before the court, and were genuine papers of the court.

As to the fourth error assigned, the joint plea last pleaded avers that Jane Brush, as guardian of these children, had received eleven hundred dollars of her wards' money, and the court had permitted, after objection made and argued, the defendants to prove by a witness her signature to a receipt for eight hundred and fifty dollars, given by her to the administrator of James Brush for the use of her wards, and admitted it as evidence of that fact. They then offered to prove, by the same witness, her signature to another receipt of like character for $167.28, which was objected to, and rejected by the court. Why the first receipt should have been admitted, after objection made and argument had, and this one, precisely like it, though differing in amount, should have been rejected, we are at a loss to perceive. We are inclined to think no valid objection exists to either, if proved in the mode proposed, the jury could say whether it was genuine or merely colorable.

The last assignment of error questions the decision of the court in overruling the motion for a new trial.

The defendants, Cox as Sheriff, and Conner as Receiver, justify, under process of a court of competent jurisdiction, purporting to have been issued by the Circuit Court of Jackson county, and clothed with the powers of a Court of Chancery. They are regular on their face, and under the seal of the court, and how could they know they were not issued by the Circuit Court?

The master in chancery, it is true, cannot, under our practice, appoint a receiver, yet this act of appointment, Conner is informed by the writ itself and the endorsement thereon, is the act of the Circuit Court, and so was the sheriff thus informed, and by acting under them, under such circumstances, they were fully justified.

But there is another ground of defense assumed by the defendants, equally as strong and as tenable as the one first interposed, and this is disclosed by the last plea.

It is believed to be a well settled principle, that a man may take his property wherever he can find it, provided he does not, in taking it, commit a breach of the peace.

If this property, then, was the property of the wards of D. H. Brush, his right to take it in a peaceable manner, and procure the aid of others for that purpose, cannot be denied. The general proposition, both at law and in equity, is, if any property in its original state and form, is covered with a trust in favor of the principal, not even a change of that state or form can divest it of that trust, or give the agent or trustee converting it, or those who represent him in right, (not being *bona fide* purchasers for a valuable consideration, without notice,) any more valid claim in respect to it than they respectively had before such change. An abuse of a trust can confer no rights on the party abusing it, or those claiming in privity with him.

This property, bought with the money of the wards, by their guardian, was trust property, their money was changed into this property, and they had a right to pursue it, so long as it could be identified. They had the right, either to hold their guardian responsible to them for the money she had received, or pursue the property she purchased with the money.

This principle is fully recognized at law in all cases where it is susceptible of being brought out as a ground of action, or of defense in a suit at law.

The judgment below is reversed, the cause remanded, and a *venire de novo* awarded.

*Judgment reversed.*